# 17-944-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

SONTERRA CAPITAL MASTER FUND LTD., CALIFORNIA STATE TEACHERS'
RETIREMENT SYSTEM, HAYMAN CAPITAL MASTER FUND, L.P., JAPAN MACRO
OPPORTUNITIES MASTER FUND, L.P.,

*Plaintiffs-Appellants*,

*v.*

UBS AG, UBS SECURITIES JAPAN CO., LTD., MIZUHO BANK, LTD., SUMITOMO
MITSUI TRUST BANK, LIMITED, FKA THE SUMITOMO TRUST & BANKING CO., LTD.,

*(caption continued on inside cover)*

On Appeal from the United States District Court
for the Southern District of New York, No. 15 Civ. 5844
Before the Honorable George B. Daniels

### BRIEF FOR DEFENDANTS-APPELLEES

ARI SAVITZKY
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

DAVID SAPIR LESSER
JAMIE DYCUS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

*Additional counsel listed in
signature block*

January 14, 2019

THE NORINCHUKIN BANK, SUMITOMO MITSUI BANKING CORPORATION, RESONA BANK, LTD., MIZUHO CORPORATE BANK, LTD., MIZUHO TRUST & BANKING CO., LTD., THE SHOKO CHUKIN BANK, LTD., SHINKIN CENTRAL BANK, THE BANK OF YOKOHAMA, LTD., SOCIETE GENERALE S.A., THE ROYAL BANK OF SCOTLAND GROUP PLC, THE ROYAL BANK OF SCOTLAND PLC, RBS SECURITIES JAPAN LIMITED, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BARCLAYS PLC, COÖPERATIEVE RABOBANK U.A., LLOYDS BANKING GROUP PLC, LLOYDS BANK PLC, ICAP PLC, ICAP EUROPE LIMITED, TULLETT PREBON PLC, BANK OF AMERICA CORPORATION, BANK OF AMERICA N.A., SOCIÉTÉ GÉNÉRALE, RBS SECURITIES INC.,

*Defendants-Appellees*,

CITIBANK, N.A., CITIGROUP INC., CITIBANK JAPAN LTD, CITIGROUP GLOBAL MARKETS JAPAN, INC., HSBC HOLDINGS PLC, HSBC BANK PLC, R.P. MARTIN HOLDINGS LIMITED, MARTIN BROKERS (UK) LTD, MERRILL LYNCH INTERNATIONAL, JOHN DOES 1-50, 1-50, NATIONAL ASSOCIATION, THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., MITSUBISHI UFJ TRUST AND BANKING CORPORATION, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES PLC, DEUTSCHE BANK AG, DB GROUP SERVICES (UK) LIMITED, HBOS PLC,

*Defendants*.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned Defendants-Appellees make the following disclosures:

### UBS AG

Defendant-Appellee UBS AG is wholly owned by UBS Group AG, a publicly traded corporation. There is no publicly held corporation that holds 10 percent or more of UBS Group AG stock.

### UBS Securities Japan Co. Ltd.

Defendant-Appellee UBS Securities Japan Co. Ltd. is a wholly owned subsidiary of UBS AG. UBS AG is wholly owned by UBS Group AG, a publicly traded corporation. No publicly held corporation holds 10 percent or more of UBS Group AG stock.

### Bank of America Corporation

Defendant-Appellee Bank of America Corporation is a publicly held company, with no parent corporation, and no publicly held company owns 10 percent or more of Bank of America Corporation's stock.

### Bank of America, N.A.

Defendant-Appellee Bank of America, N.A. is a National Association and is 100 percent owned by BANA Holding Corporation. BANA Holding Corporation is 100% owned by BAC North America Holding Company. BAC North America

Holding Company is 100 percent owned by NB Holdings Corporation. NB Holdings Corporation is 100 percent owned by Bank of America Corporation.

## Barclays PLC

Defendant-Appellee Barclays PLC is a publicly held corporation with no parent corporation, and no publicly held company owns 10 percent or more of Barclays PLC's stock.

## Barclays Bank PLC

Defendant-Appellee Barclays Bank PLC is a wholly owned subsidiary of Barclays PLC, which is a publicly held corporation, and no other publicly held company owns 10 percent or more of Barclays Bank PLC's stock.

## Barclays Capital Inc.

Defendant-Appellee Barclays Capital Inc. identifies the following as parent corporations or publicly held corporations that own 10 percent or more of any class of its equity interests: Barclays PLC, Barclays Bank PLC, Barclays US LLC, and Barclays Group US Inc.

## Coöperatieve Rabobank U.A.

Defendant-Appellee Coöperatieve Rabobank U.A. (f/k/a Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.) has no parent corporation and no publicly held company owns 10 percent or more of Coöperatieve Rabobank U.A.

## ICAP plc

Defendant-Appellee ICAP plc is now known as NEX International Limited ("NEX International"). NEX International is a wholly owned non-public indirect subsidiary of CME Group, Inc., a publicly traded company.

## ICAP Europe Limited

Defendant-Appellee ICAP Europe Limited is a wholly owned subsidiary of ICAP Global Broking Holdings Ltd., which is not a publicly traded company. ICAP Europe Limited is indirectly owned by TP ICAP plc, a publicly traded company.

## Lloyds Banking Group plc and Lloyds Bank plc

Defendant-Appellee Lloyds Banking Group plc is a publicly held corporation, and no publicly held company owns 10 percent or more of Lloyds Banking Group plc's stock. Defendant-Appellee Lloyds Bank plc is a subsidiary of Defendant-Appellee Lloyds Banking Group plc, which is a publicly held corporation, and no other publicly traded company owns 10 percent or more of Lloyds Bank plc's stock.

## Mizuho Corporate Bank, Ltd.

Defendant-Appellee Mizuho Corporate Bank, Ltd., n/k/a Mizuho Bank, Ltd., is a wholly owned subsidiary of Mizuho Financial Group, Inc., a publicly held

company.  No publicly held corporation owns 10 percent or more of Mizuho Bank, Ltd., other than Mizuho Financial Group, Inc.

## The Norinchukin Bank

Defendant-Appellee The Norinchukin Bank has no parent corporation, and no publicly held company owns 10 percent or more of The Norinchukin Bank's stock.

## The Royal Bank of Scotland Group plc

Defendant-Appellee The Royal Bank of Scotland Group plc ("RBS Group") is a public limited corporation organized under the laws of the United Kingdom. No publicly held entity owns more than 10 percent of the shares of RBS Group.

## The Royal Bank of Scotland plc

Defendant-Appellee The Royal Bank of Scotland plc changed its name to NatWest Markets Plc in 2018.  NatWest Markets Plc is a wholly owned subsidiary of RBS Group.

## RBS Securities Inc.

Defendant-Appellee RBS Securities Inc. changed its name to NatWest Markets Securities Inc. in 2018.  NatWest Markets Securities Inc. is a wholly owned subsidiary of NatWest Markets Plc.

## RBS Securities Japan Limited

Defendant-Appellee RBS Securities Japan Limited changed its name to NatWest Markets Securities Japan Limited in 2018. NatWest Markets Securities Japan Limited is a wholly owned subsidiary of NatWest Markets Plc.

## Société Générale

Defendant-Appellee Société Générale has no parent company. No publicly held corporation owns 10 percent or more of Société Générale's stock.

## Tullet Prebon plc

Defendant-Appellee Tullett Prebon plc is now known as TP ICAP plc. TP ICAP plc is a publicly traded corporation and does not have any parent corporation. Schroders plc is the only publicly traded corporation that owns 10 percent or more of TP ICAP plc's stock.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ vii

INTRODUCTION ...................................................................................... 1

STATEMENT OF THE ISSUES ................................................................ 4

STATEMENT OF THE CASE .................................................................... 5

      A.    Yen LIBOR and Euroyen TIBOR ....................................... 5

      B.    Plaintiffs' Financial Instruments .......................................... 7

      C.    The *Laydon* Action ............................................................ 8

      D.    This Action ...................................................................... 10

SUMMARY OF ARGUMENT .................................................................. 13

ARGUMENT .......................................................................................... 16

I.    THE DISTRICT COURT PROPERLY DISMISSED SONTERRA'S AND
CALSTRS'S CLAIMS ......................................................................... 16

      A.    The District Court Was Entitled To Resolve Disputed
Issues Of Jurisdictional Fact ............................................. 17

      B.    The District Court Did Not Commit Clear Error ................... 23

      C.    The District Court's Conclusion Was Equally Correct
Under A Facial Analysis Of The Amended Complaint .......... 26

      D.    The District Court Correctly Concluded That It Lacked
Subject Matter Jurisdiction Over Sonterra's And
CalSTRS's Claims ............................................................. 30

II.    THE DISTRICT COURT PROPERLY DISMISSED THE HAYMAN
PLAINTIFFS' CLAIMS ....................................................................... 31

CONCLUSION ....................................................................................... 34

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140
(2d Cir. 2011)...................................................................... 18, 26, 28, 29

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003)..............................2, 14, 18, 20, 21

*Carter v. HealthPort Technologies, LLC*, 822 F.3d 47
(2d Cir. 2016).................................................................................21, 23

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ...........................27

*Dennis v. JPMorgan Chase & Co.*, --- F. Supp. 3d ---, No. 16 Civ.
6496, 2018 WL 6168084 (S.D.N.Y. Nov. 26, 2018) ................................11

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145
(2d Cir. 2014)..................................................................................26

*Dubuisson v. Stonebridge Life Insurance Co.*, 887 F.3d 567
(2d Cir. 2018)................................................................................30, 34

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*,
565 F.3d 56 (2d Cir. 2009)..................................................................23

*Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180 (2d Cir. 2002)...................18

*Fountain v. Karim*, 838 F.3d 129 (2d Cir. 2016)..............................................18

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
No. 16 Civ. 5263, 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017).............25

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ...................17, 23

*John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017)... 20, 21, 28

*JPMorgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ...............................................................12

*Kamen v. AT&T Co.*, 791 F.2d 1006 (2d Cir. 1986).........................................22

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)......................26

*Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2014 WL 1280464
  (S.D.N.Y. Mar. 28, 2014).........................................................................9

*Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2015 WL 1515487
  (S.D.N.Y. Mar. 31, 2015)............................................................ 9, 11, 22

*Lederman v. New York City Department of Parks & Recreation*, 731
  F.3d 199 (2d Cir. 2013) ...................................................................... 24

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201
  (2d Cir. 2016)................................................................................14, 18

*M.E.S., Inc. v. Snell*, 712 F.3d 666 (2d Cir. 2013)........................................ 20

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) .............................16, 23

*Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216 (2d Cir. 2017) .................... 18

*Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591
  (2d Cir. 1993)........................................................................................23

*Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129
  (2d Cir. 1998).......................................................................................21

*Sierra Club v. Con-Strux, LLC*, 911 F.3d 85 (2d Cir. 2018) ............................ 26

*Sierra Club v. Morton*, 405 U.S. 727 (1972)..................................................... 16

*Singh v. United States Citizenship & Immigration Services*, 878 F.3d
  441 (2d Cir. 2017)................................................................................. 17

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group*, 277 F.
  Supp. 3d 521 (S.D.N.Y. 2017)............................................................. 25

*St. Paul Fire & Marine Insurance Co. v. Universal Builders Supply*,
  409 F.3d 73 (2d Cir. 2005)................................................................... 18

*Sullivan v. Barclays Bank PLC*, No. 13 Civ. 2811, 2017 WL 685570
  (S.D.N.Y. Feb. 21, 2017)...................................................................... 25

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239
  (2d Cir. 2014)....................................................................................... 18

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................13, 30

*Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, 215
F.3d 247 (2d Cir. 2000) ....................................................................18

## DOCKETED CASES

*Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (S.D.N.Y.)................. 8, 9, 10,12

## STATUTES AND RULES

Fed. R. App. P. 28..........................................................................................24

Fed. R. Civ. P.
Rule 12................................................................. 1, 13, 16, 18, 22, 29
Rule 17........................................................................................11

## OTHER AUTHORITIES

Hull, John C., *Options, Futures, And Other Derivatives* (7th ed. 2009) .........12, 22

Labuszewski, John W., et al., *Understanding FX Futures*, CME
Group (Apr. 22, 2013), http://www.cmegroup.com/
education/files/understanding-fx-futures.pdf.....................................12, 22

# INTRODUCTION

Plaintiffs allege a conspiracy to manipulate Yen LIBOR and Euroyen TIBOR. But Plaintiffs' own allegations and the documents referenced in the Amended Complaint show that the supposed manipulation could not have injured them. The District Court therefore correctly concluded that Plaintiffs lack Article III standing to pursue their claims against any Defendant and granted Defendants' Rule 12(b)(1) motion to dismiss. This Court should affirm.[1]

The District Court's conclusion applies equally to each of the two distinct sets of Plaintiffs. One set, consisting of Sonterra Capital Master Fund, Ltd. ("Sonterra"), a dissolved investment fund, and the California State Teachers' Retirement System ("CalSTRS"), allegedly purchased Yen foreign exchange ("FX") forwards. The Amended Complaint alleges that these Plaintiffs were injured by the supposed manipulation because their FX forwards were priced "based on" Yen LIBOR. JA135-JA136 (AC ¶ 199). But Plaintiffs' conclusory allegations concerning a link between Yen LIBOR and the price of Yen FX

---

[1]      This brief is submitted on behalf of the following Defendants, banks that served on the Yen LIBOR panel, certain of their affiliates, and two interdealer brokers and an affiliate: UBS AG; UBS Securities Japan Co. Ltd.; Bank of America Corporation; Bank of America, N.A.; Barclays PLC; Barclays Bank PLC; Barclays Capital Inc.; Coöperatieve Rabobank U.A.; ICAP plc; ICAP Europe Limited; Lloyds Banking Group plc; Lloyds Bank plc; Mizuho Corporate Bank, Ltd.; The Norinchukin Bank; The Royal Bank of Scotland Group plc; The Royal Bank of Scotland plc; RBS Securities Inc.; RBS Securities Japan Limited; Société Générale; and Tullet Prebon plc.

forwards are contradicted by their own more specific allegations and undercut by the sources cited in the Amended Complaint and considered by the District Court. They are also contrary to the District Court's conclusion, in a related case involving the same benchmarks, the same counsel, and most of the same Defendants, that "Yen currency futures contracts and forward agreements[] are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR." SA5 (internal quotation marks omitted). The District Court accordingly held that Plaintiffs could not allege injury-in-fact and lacked Article III standing, warranting dismissal.

On appeal, Plaintiffs contend that the District Court wrongly applied a "factual" rather than "facial" analysis to the jurisdictional issues here, improperly determining that Yen FX forwards are not priced "based on" Yen LIBOR. Instead, Plaintiffs argue, the District Court should simply have accepted Plaintiffs' conclusory allegations on that subject and afforded them standing to sue. But under well-settled Second Circuit law, the District Court was entitled to resolve any disputed facts essential to the exercise of its subject matter jurisdiction. Nor have Plaintiffs pointed to any aspect of the District Court's decision that constitutes clear error, as would be required to disturb such a finding of fact. *E.g.*, *APWU v. Potter*, 343 F.3d 619, 623-624 (2d Cir. 2003). And in any event, even under the facial analysis Plaintiffs insist was required, no different result is warranted. Plaintiffs' own Amended Complaint and the authorities referenced

- 2 -

therein are more than sufficient to demonstrate Plaintiffs' lack of Article III standing based on their alleged transactions in Yen FX forwards.

Similar problems afflict the other set of Plaintiffs, Hayman Capital Master Fund, L.P. ("Hayman") and Japan Macro Opportunities Master Fund, L.P. ("Japan Macro") (together, "Hayman Plaintiffs"). The Hayman Plaintiffs claim to have transacted in interest rate swaps and swaptions under which they stood to receive floating-rate payments based on Yen LIBOR. They contend in conclusory fashion that the supposed Yen LIBOR manipulation affected the "price" or "fair market value" of their swaps and swaptions so that they "paid too much or received too little … each time they purchased or sold" such instruments. Br. 33; *see also* JA466-JA469 (AC ¶¶ 910-917). Yet the Hayman Plaintiffs fail to show that they suffered any injury as to either instrument.

A swap is simply a bilateral agreement to exchange future streams of fixed and floating interest rate payments. Accordingly, the Hayman Plaintiffs allege that they entered into agreements to make future payments of a fixed interest rate in exchange for payments of a floating interest rate tied to Yen LIBOR. They allege no other "price" term, however; nor do they plead any facts suggesting that merely entering into a swap agreement has any economic impact on the parties. And as Judge Daniels found, the Hayman Plaintiffs do not allege that their swaps were

- 3 -

paid out—that is, that they actually made or received any fixed- or floating-rate payments—much less that they suffered injury from such payments.

As to the swaptions, the Hayman Plaintiffs similarly do not allege that there were ever any payments based on Yen LIBOR; indeed, as the District Court also found, they do not allege that the swaptions were ever even exercised, which would have been necessary to trigger any payments pursuant to the underlying swaps. And as explained more fully below, even if the Yen LIBOR manipulation alleged in the Amended Complaint could have affected the price of those instruments when they were initially "purchased or sold," the Hayman Plaintiffs' own allegations suggest that the effect would have been to benefit the Hayman Plaintiffs rather than to injure them.

Because no Plaintiff suffered any Article III injury traceable to the alleged Yen LIBOR and Euroyen TIBOR manipulation, the District Court properly dismissed the Amended Complaint. This Court should affirm.

## STATEMENT OF THE ISSUES

1. Whether the District Court properly concluded that Sonterra and CalSTRS lack Article III standing because the Yen FX forwards they claim to have purchased are not priced "based on" Yen LIBOR or Euroyen TIBOR.

2. Whether the District Court properly concluded that the Hayman Plaintiffs lack Article III standing because they do not allege that their swaps were paid out or

that their swaptions were exercised and cannot demonstrate injury arising from any impact of the alleged manipulation on the "price" of those instruments when they were "purchased or sold."

## STATEMENT OF THE CASE[2]

### A.    Yen LIBOR and Euroyen TIBOR

Plaintiffs brought this putative class action based on alleged manipulation of two benchmark interest rates, Yen LIBOR and Euroyen TIBOR, which may be used in certain financial transactions.[3]  Yen LIBOR and Euroyen TIBOR are distinct benchmarks set by different banking associations, based on submissions from different panels of banks, using different criteria, at different times of day, on different continents.  Plaintiffs contend that dozens of banks and brokers conspired during a nearly six-year class period to make or otherwise facilitate "false submissions" to the separate industry associations that calculated Yen LIBOR and Euroyen TIBOR, thus manipulating the benchmarks both upward and downward. *See* JA130-JA133, JA496 (AC ¶¶ 179-190, 996).

---

[2]    The facts set forth herein are drawn from Plaintiffs' Amended Complaint unless otherwise noted.

[3]    TIBOR stands for "Tokyo Interbank Offered Rate."  LIBOR stands for "London Interbank Offered Rate."

*Yen LIBOR.* During the putative class period, Yen LIBOR was calculated and published in London by the British Bankers' Association ("BBA").[4] Yen LIBOR was calculated each day for 15 maturities, ranging from overnight to 12 months, based on submissions from a panel of 16 different banks selected by the BBA. Certain Defendants were members of the Yen LIBOR panel. Yen LIBOR submissions reflected each panel bank's answer to the hypothetical question: "At what rate could you borrow Yen, were you to do so by asking for and then accepting inter-bank offers in a reasonable market size just prior to 11 a.m.?" Thomson Reuters, an independent entity contracted by the BBA, discarded the top and bottom quartiles, averaged the remaining eight submissions, and published the result as the daily Yen LIBOR benchmark.

*Euroyen TIBOR.* During the putative class period, Euroyen TIBOR was calculated in Tokyo by the Japanese Bankers Association ("JBA"). Euroyen TIBOR was calculated each day for tenors ranging from one week to 12 months, based on submissions from a panel of banks selected by the JBA. Certain Defendants were members of the Euroyen TIBOR panel. Unlike Yen LIBOR submissions, which were to reflect each bank's own estimated borrowing rates, the

---

[4]     This section describes the process for setting Yen LIBOR and Euroyen TIBOR during the proposed class period of January 1, 2006 through June 30, 2011. Statements in this paragraph and the next are drawn from JA130-JA133, JA135 (AC ¶¶ 179-190, 199).

JBA panel banks' Euroyen TIBOR submissions reflected each bank's estimate of
the prevailing market interest rate for transactions between hypothetical prime
banks in the Japanese offshore market as of 11 a.m. Tokyo time each day. For
each tenor, the JBA discarded the two highest and two lowest submissions,
averaged the remaining submissions, and published the result as the daily Euroyen
TIBOR benchmark.

### B. Plaintiffs' Financial Instruments

Plaintiffs' purported stake in any controversy concerning alleged
manipulation is premised on their transactions in Yen FX forwards, interest rate
swaps, and swaptions.

*Yen FX Forwards.* Plaintiffs allege that Sonterra and CalSTRS entered into
Yen FX forward contracts during the class period. JA89-JA90, JA465-JA466,
JA470-JA475 (AC ¶¶ 55, 57, 906-909, 918-935). An FX forward is an over-the-
counter "derivative in which one party agrees to buy or sell a certain amount of a
specified currency, *e.g.*, Yen, from another party on some future date, at a price
agreed upon today." JA135 (AC ¶ 199). The price is "typically quoted 'in terms
of' units of the Term Currency, *e.g.*, for JPY/USD the number of dollars per one
Yen." JA135-JA136 (AC ¶ 199 n.101). Yen FX forwards do not incorporate Yen
LIBOR, Euroyen TIBOR, or any other benchmark as a term. The amount to be
paid in the future—an amount fixed by contract—is known by the parties at the

outset.  *Id.*  Accordingly, contrary to Plaintiffs' allegation,  Yen FX forwards are not priced "based on" Yen LIBOR.  JA135 (AC ¶ 199).

*Swaps and Swaptions*.  The Hayman Plaintiffs allegedly  transacted in interest rate swaps and swaptions linked to Yen LIBOR during the class period. JA89-JA90 (AC ¶ 56).  Interest rate swaps are over-the-counter instruments in which counterparties agree to exchange a stream of payments at a fixed interest rate for a stream of floating-rate payments based on some reference rate, such as Yen LIBOR.  JA133-JA134 (AC ¶¶ 192-194).  An interest rate swaption is an over-the-counter option in which the buyer obtains an entitlement, but not an obligation,  to enter into an interest rate swap with the issuer on a specified future date, known as the "exercise date," after which the parties would exchange fixed-rate and floating-rate payments pursuant to the swap, as described above.  JA134 (AC ¶ 196).

## C.    The *Laydon* Action

In 2012, several years prior to the filing  of this action, the same attorneys who represent Plaintiffs in this action filed  a putative class action against many of the Defendants here, asserting similar causes of action based on essentially  the same alleged conduct.  Compl., *Laydon v. Mizuho Bank, Ltd.* ("*Laydon*"), No. 12 Civ. 3419 (S.D.N.Y. Apr. 30, 2012), ECF No. 1.  The *Laydon* case and the present one were assigned to the same district judge based on Plaintiffs' representation that

the two cases were related. *See Sonterra* Civil Cover Sheet, ECF No. 2, at 1. In *Laydon*, the plaintiff sued based on Chicago Mercantile Exchange ("CME") transactions in Euroyen TIBOR futures contracts. *See Laydon* Compl. ¶¶ 14, 64-71, ECF No. 1. On March 28, 2014, the District Court dismissed all but certain claims under the Commodity Exchange Act. *Laydon v. Mizuho Bank, Ltd.* ("*Laydon I*"), No. 12 Civ. 3419, 2014 WL 1280464, at *7-14 (S.D.N.Y. Mar. 28, 2014).

The plaintiff in *Laydon* then moved for leave to amend his complaint to expand the class beyond persons who transacted in Euroyen TIBOR futures, proposing, among other things, to assert RICO claims on behalf of purchasers of "Euroyen-based derivatives"—including Yen FX forwards and currency futures. After briefing and argument by the parties, the District Court denied the motion, holding that Yen FX forwards "are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR, and any causation analysis leads to the conclusion that the connection is too attenuated and speculative to support standing." *Laydon v. Mizuho Bank, Ltd.* ("*Laydon II*"), No. 12 Civ. 3419, 2015 WL 1515487, at *10 (S.D.N.Y. Mar. 31, 2015).

In April 2015, CalSTRS, represented by the same counsel, moved to intervene and assert in *Laydon* the same claims that the District Court had just rejected in its denial of the motion for leave to amend. No. 12 Civ. 3419, ECF No.

460 (S.D.N.Y. Apr. 29, 2015). The District Court denied that motion as well. No. 12 Civ. 3419, ECF No. 525 (S.D.N.Y. Oct. 8, 2015). CalSTRS appealed from the denial to this Court but, in June 2016, after both parties filed opening briefs, CalSTRS withdrew the appeal voluntarily.

### D. This Action

In July 2015, while CalSTRS's motion to intervene in *Laydon* was pending, this action was filed in the name of Sonterra (which by then had already been dissolved for several years, though that fact that was not disclosed to the District Court or Defendants) and Hayman Capital Management, L.P. ECF No. 1. As with the proposed amended complaint and CalSTRS's intervenor complaint in *Laydon*, Plaintiffs in this action purport to represent a class of purchasers of various "Euroyen-based derivatives," including Yen FX forwards, swaps, and swaptions. *See* JA481-JA483 (AC ¶¶ 956-962). Plaintiffs claim they were injured by a global conspiracy to manipulate Yen LIBOR and Euroyen TIBOR, and assert antitrust, RICO, and common law claims against dozens of banks and brokers that are alleged to have been part of the supposed conspiracy. *See* JA496-JA520 (AC ¶¶ 994-1078).

Defendants moved to dismiss on numerous grounds, including failure to state a claim, lack of statutory standing, lack of personal jurisdiction, and lack of subject matter jurisdiction. On March 3, 2017, the District Court granted

Defendants' motion, holding that Plaintiffs did not have Article III standing, and dismissed Plaintiffs' claims for lack of subject matter jurisdiction. The District Court did not address Defendants' other proffered grounds for dismissal, including lack of personal jurisdiction.[5]

As to Sonterra and CalSTRS and their transactions in Yen FX forwards, the District Court first adverted to its finding in *Laydon* that "'Yen currency futures contracts and forward agreements[] are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR, and any causation analysis leads to the conclusion that the connection is too attenuated and speculative to support standing.'" SA5 (quoting *Laydon II*, 2015 WL 1515487, at *10). The District Court explained that, even considering the issue afresh, it identified no support for Plaintiffs' allegation that "'derivatives traders use Yen-LIBOR to price Yen foreign exchange forwards.'" SA5 (quoting JA136 (AC ¶ 200)). Although Plaintiffs relied upon a

---

[5]     For avoidance of doubt, Defendants expressly reserve those jurisdictional and other defenses and objections that they have asserted in this action and do not intend this brief or their participation in this appeal taken by Plaintiffs to effect a waiver of those defenses and objections or to constitute consent on their part to this Court's or the District Court's jurisdiction. Defendants also reserve the right to make in any future proceedings any other arguments, including that Sonterra was in fact dissolved in its home jurisdiction of the Cayman Islands in 2012—years before it "filed" its initial complaint in this action. *See Dennis v. JPMorgan Chase & Co.*, --- F. Supp. 3d ---, No. 16 Civ. 6496, 2018 WL 6168084, at *3 (S.D.N.Y. Nov. 26, 2018) (holding that, as a dissolved entity, Sonterra lacked capacity to sue under Rule 17 and Cayman law).

- 11 -

CME publication and a derivatives textbook in ostensible support of their allegation, the District Court observed that those sources failed to demonstrate that Yen LIBOR is "used to price foreign exchange forwards." *Id.* (citing JA135-JA136 (AC ¶¶ 199-200 nn.100-102)); *see* Labuszewski, et al., *Understanding FX Futures*, CME Group (Apr. 22, 2013), http://www.cmegroup.com/education/files/understanding-fx-futures.pdf (cited at AC ¶ 199 nn.100-101 and included at JA2497-JA2511); Hull, *Options, Futures, And Other Derivatives* 74, 112-115 (7th ed. 2009) (cited at JA136 (AC ¶ 200 n.102)). Plaintiffs thus failed to show that Yen LIBOR is used to price *all* Yen FX forwards generally or that their *own* Yen FX forwards were priced based on Yen LIBOR. *See* SA5-SA6.

With regard to the Hayman Plaintiffs, the District Court explained that they did "not allege that any of their swaps were paid out or that any of their swaptions were exercised" as would have been required to trigger any floating-rate payments based on supposedly artificial Yen LIBOR. SA6. Accordingly, the District Court held that the Hayman Plaintiffs failed to "allege sufficient facts to demonstrate that they suffered injury-in-fact traceable to Defendants' alleged conduct." *Id.*[6]

---

[6] The District Court also held that Plaintiffs lacked Article III standing to bring claims arising from the purchase of forward rate agreements because no Plaintiff transacted in such instruments. SA4-SA5. Plaintiffs have waived any challenge to that aspect of the District Court's holding. *See JPMorgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived.").

Without reaching any of Defendants' alternative grounds for dismissal, including lack of personal jurisdiction and numerous Rule 12(b)(6) defenses, the District Court dismissed the Amended Complaint on Article III standing grounds under Rule 12(b)(1). This appeal followed.

## SUMMARY OF ARGUMENT

A plaintiff may invoke the federal judicial power to resolve a dispute only if it has a concrete stake in the outcome. Because Plaintiffs suffered no injury traceable to alleged Yen LIBOR or Euroyen TIBOR manipulation, they lack Article III standing and dismissal was proper.[7]

*First*, the District Court properly dismissed Plaintiffs' claims based on transactions by Sonterra and CalSTRS in Yen FX forwards because Plaintiffs did not show that any, let alone all, Yen FX forwards are priced "based on Yen LIBOR," and did not even attempt to establish a link between Yen FX forwards and Euroyen TIBOR. Accordingly, there was no "actionable causal relationship" between those Plaintiffs' transactions and Defendants' alleged misconduct. *Warth v. Seldin*, 422 U.S. 490, 507 (1975).

---

[7]     Plaintiffs do not raise on appeal, and thus have abandoned, any argument that they have standing based on a supposed link between the financial instruments they traded and Euroyen TIBOR. And in any case, for the reasons set forth in text and in the separate brief filed today by the Defendants that served only on the Euroyen TIBOR panel, Plaintiffs failed to plead any facts supporting a link between their alleged injuries and Euroyen TIBOR.

On appeal, Plaintiffs contend that the District Court wrongly applied a "factual" analysis to the question of subject matter jurisdiction and should instead have applied a "facial" analysis limited strictly to considering only the allegations of the Amended Complaint. The District Court was under no such obligation. Rather, the District Court was permitted to decide any disputed facts essential to its own subject matter jurisdiction. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 211 (2d Cir. 2016); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). Tellingly, while Plaintiffs complain that the District Court engaged in improper factfinding, they make no attempt to argue that the District Court's determinations here constitute clear error warranting reversal.

Moreover, even if Plaintiffs were correct that the District Court was required to apply a facial analysis, it would make no difference because the pleadings themselves foreclose any claim of injury arising from a supposed link between Yen FX forwards and Yen LIBOR. It is well established that a plaintiff's general allegations need not be accepted as true when they are inconsistent with more specific allegations elsewhere in the complaint, and also that the contents of documents relied on in the complaint trump conclusory or contradictory allegations based on those documents. Here, the conclusory allegation that Sonterra's and CalSTRS's FX forwards are priced "based on" Yen LIBOR is contradicted by

- 14 -

other, more specific allegations in the Amended Complaint and undermined by the documents that Plaintiffs cited and relied upon in that pleading.

*Second*, the District Court properly dismissed the claims of the Hayman Plaintiffs for lack of standing. The Hayman Plaintiffs claim to have transacted in interest rate swaps involving the exchange of fixed-rate payments for payments determined by reference to a floating rate, namely Yen LIBOR, as well as swaptions that gave the holder the option to enter into such swap transactions. They claim that supposed Yen LIBOR manipulation injured them because "Yen-LIBOR affects the value of Yen-LIBOR-based interest rate swaps by determining the value of the floating-rate payments due under that swap contract." JA134 (AC ¶ 195). But the Hayman Plaintiffs do not allege that any of their swaps were paid out, and they do not allege that any of their swaptions was ever exercised as would have been required for floating-rate payments to be made. The Hayman Plaintiffs' conclusory allegation that supposed Yen LIBOR manipulation affected the "price" of their swaps and swaptions when the instruments were initially "purchased or sold" is untenable, and again belied by the Hayman Plaintiffs' more specific allegations in the Amended Complaint. This cannot suffice to show Article III injury, and the Hayman Plaintiffs lack standing to sue.

**ARGUMENT**

On appeal from a Rule 12(b)(1) dismissal, this Court reviews factual findings for clear error and legal conclusions de novo. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To establish an injury-in-fact as required for Article III standing, a plaintiff must show that he is "himself among the injured." *E.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 734-735 (1972). Plaintiffs have not made the required showing.

**I.    THE DISTRICT COURT PROPERLY DISMISSED SONTERRA'S AND CALSTRS'S CLAIMS**

Sonterra and CalSTRS argue that the District Court was required to accept without scrutiny the generalized, conclusory allegation, essential to their claim of injury, that Yen FX forwards are "'priced based on' Yen-LIBOR." *E.g.*, Br. 13-14 (citing JA135-JA136 (AC ¶¶ 199-200)); Br. 22. That is wrong. In analyzing Defendants' challenge to subject matter jurisdiction, the District Court was not limited to the four corners of the Amended Complaint, but instead was permitted to assure itself of its own subject matter jurisdiction, including by resolving the parties' disputes concerning jurisdictional facts. Plaintiffs argue that the District Court engaged in improper factfinding, but any factfinding necessary to the District Court's jurisdiction was entirely proper. Nor was there clear error in the District Court's determination that Yen FX forwards are not, in fact, priced "based on" Yen LIBOR. And in any event, even if the District Court had been required to

- 16 -

limit itself to a facial analysis (and it was not), applying that analysis leads to the same result.

### A. The District Court Was Entitled To Resolve Disputed Issues Of Jurisdictional Fact

The crux of Sonterra and CalSTRS's argument for reversal is that the District Court engaged in improper factfinding and instead should have simply accepted their generalized, conclusory allegation that "Yen foreign exchange forwards are … priced based on Yen-LIBOR." *E.g.*, Br. 22 (citing JA135-JA136 (AC ¶¶ 199-200)); Br. 27 (citing JA470-JA471 (AC ¶ 919)). The District Court was not required to credit such allegations.

As courts of limited jurisdiction, federal courts must "verify the existence of subject-matter jurisdiction before proceeding to the merits." *Singh v. United States Citizenship & Immigration Servs.*, 878 F.3d 441, 445 (2d Cir. 2017). Uncertainty concerning subject matter jurisdiction must be resolved before a court can address the merits of a case, and although "[c]ourts do not usually raise claims or arguments on their own," they "have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions" even if "the parties … overlook or elect not to press" them. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

That is why, when a question of subject matter jurisdiction turns on disputed facts, a court may consider and determine those disputed jurisdictional facts, even

on a motion to dismiss. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 211 (2d Cir. 2016); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *Filetech S.A. v. France Telecom S.A.*, 304 F.3d 180, 183 (2d Cir. 2002) (per curiam). It need not simply accept a plaintiff's version of such facts. *See Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) ("'[i]n resolving a motion to dismiss under Rule 12(b)(1),'" a district court need only take "'all *uncontroverted* facts in the complaint … as true'" (emphasis added) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014))). Instead, it may "rely on information beyond the face of the complaint." *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005); *see also Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (courts "may 'refer[] to evidence outside of the pleadings' to resolve issues of jurisdictional fact" (quoting *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000))); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam) ("To the extent that [defendants'] Rule 12(b)(1) motion placed jurisdictional facts in dispute … the district court properly considered evidence outside the pleadings.").

Here, in deciding Defendants' Rule 12(b)(1) motion, the District Court was entitled to determine the facts essential to its own jurisdiction, including by considering matters beyond the pleadings if necessary. It was not required to

accept as true disputed factual allegations essential to its own jurisdiction simply because they appeared in the Amended Complaint. Plaintiffs' arguments to the contrary are unavailing.

On appeal, Plaintiffs assert (*e.g.*, Br. 17) that Defendants raised only a "facial" challenge to the District Court's subject matter jurisdiction and did not dispute any factual allegations contained in the Amended Complaint. That is both irrelevant (because courts have an independent obligation to ascertain the existence of subject matter jurisdiction, regardless of the parties' arguments) and incorrect. A review of the briefs filed in the District Court makes clear that Defendants challenged the accuracy of Plaintiffs' generalized allegation that Yen FX forwards are priced "based on Yen LIBOR." *See* Mem. of Law 10-13, ECF No. 148 (challenging Plaintiffs' "attempt to construct a link between Yen LIBOR and FX forwards where none exists"). And in opposing Defendants' motion to dismiss, Plaintiffs asserted that Defendants had raised "fact-based" arguments "attempting to disprove the … pricing relationship between Yen-LIBOR and the Yen foreign exchange forwards." MTD Opp. 28, ECF No. 208. Plaintiffs then engaged in that asserted factual dispute, by, among other things, attempting to offer extrinsic support for the supposed relationship between Yen LIBOR and Yen FX forwards, including, among other things, the sworn declaration of CalSTRS's Deputy Chief Investment Officer, which was filed previously by CalSTRS in the *Laydon* case.

*Id.* at 8 n.5 & 29 (citing and referring to Cunningham Decl., *Laydon*, No. 12 Civ. 3419, ECF No. 476-1). Accordingly, the District Court, in articulating the applicable standard of review, cited cases discussing factual challenges to subject matter jurisdiction. *See APWU*, 343 F.3d at 623 (cited at SA3); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (cited at SA3). Even on appeal, Plaintiffs complain that Defendants raised "competing factual arguments," Br. 29, requiring the District Court to "resolve[] contested issues of fact," *id.* at 18.

Plaintiffs' reliance (*e.g.*, Br. 24-28) on this Court's decision in *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 737-738 (2d Cir. 2017), is misplaced. Unlike this case, *John* concerned a challenge to standing solely implicating the sufficiency of the allegations in the complaint. In *John*, the district court held that the plaintiff had failed to establish an injury because the complaint did not include detailed factual allegations that would definitively establish his injury. *See id.* at 737 (quoting district court's decision as faulting plaintiff for "failing to allege 'an investigative finding of ubiquitous, systematic over-weighting at Whole Foods' New York City stores,' 'invariable incidents of this deceptive labeling practice,' and 'across-the-board overcharging'"). This Court held that imposing such a high pleading burden was improper because "[w]hen the defendant asserts a 'facial' challenge to standing, … courts should … draw from the pleadings all reasonable inferences in the plaintiff's favor" and presume that "'general allegations embrace

those specific facts that are necessary to support the claim.'" *Id.* (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 58 (2d Cir. 2016)). *John* thus stands for the uncontroversial proposition that, to overcome a facial challenge to subject matter jurisdiction, a plaintiff may rely upon general allegations that support standing (provided they are not contradicted by other, more specific allegations). But even if *John* supported Plaintiffs' arguments concerning such a facial challenge (and as explained *infra* at 28-29, it does not), *John* says nothing about a factual challenge.[8]

Plaintiffs further argue (*e.g.*, Br. 29) that it was improper for the District Court to consider materials beyond the pleadings because Defendants' arguments were based "solely on the allegations in the Complaint." Plaintiffs are wrong. To be sure, Defendants noted the weakness of the allegations in the Amended Complaint that Yen FX forwards are priced based on Yen LIBOR, and indeed, as discussed below, *infra* Part I.C, the District Court could have dismissed Plaintiffs' claims for lack of subject matter jurisdiction based on the pleadings alone. But

---

[8]     Plaintiffs also claim that the District Court improperly relied on a statement in *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998), that "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleading inferences favorable to the party asserting it." They argue that the Court in *John* rejected this statement. Br. 25-26. But again, *John* applies where a "defendant asserts a 'facial' challenge." 858 F.3d at 737. In any event, the District Court cited *Drakos* only in a "quoting" parenthetical. *See* SA5. The court relied more directly on this Court's decision in *APWU*, which explains that, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact." 343 F.3d at 627 (cited at SA3).

Defendants also relied on "Understanding FX Futures," the CME paper that Plaintiffs cited in their Amended Complaint. *See* Mem. of Law 11-12, ECF No. 148. Defendants submitted the CME paper to the District Court and showed that it does not mention Yen LIBOR at all or otherwise bear out Plaintiffs' description of their alleged injury. *Id.* The District Court also properly considered the other publication cited by Plaintiffs, a textbook on derivatives, which it similarly concluded lacked support for Plaintiffs' claims. *See* SA5 (citing JA136 (AC ¶ 200 n.102) and quoting from the Hull, *Options, Futures, And Other Derivatives* 112, *supra*). Moreover, the District Court, in its *Laydon II* decision, had already considered and rejected the same hollow support offered by Plaintiffs here in concluding that "Yen currency … forward agreements[] are not indexed or priced by reference to Euroyen TIBOR or Yen LIBOR." *See* No. 12 Civ. 3419, 2015 WL 1515487 at *10 (S.D.N.Y. Mar. 31, 2015).[9]

---

[9]   Contrary to Plaintiffs' suggestion (Br. 18-19), this Court has not required defendants to submit any particular kind of evidence in order to raise a factual challenge to subject matter jurisdiction. *See Kamen v. AT&T Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit *or otherwise*." (emphasis added)). Instead, the distinction between factual and facial challenges turns on whether the party disputing subject matter jurisdiction accepts as true the complaint's factual allegations relevant to jurisdiction—which Defendants manifestly never have.

In short, under the well-established law of this Circuit, the District Court

was permitted to decide questions of jurisdictional fact. Indeed, even if

Defendants had not challenged the accuracy of the jurisdictional facts alleged in

the Amended Complaint, the District Court *still* would have acted well within its

discretion by raising and resolving issues of jurisdictional fact *sua sponte*.

*Henderson*, 562 U.S. at 434; *see also Durant, Nichols, Houston, Hodgson &*

*Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009) (court has

"obligation to raise the matter of subject matter jurisdiction *whenever* it appears

from the pleadings or otherwise that jurisdiction is lacking" (internal quotation

marks omitted)). Plaintiffs' legal arguments to the contrary fail.

## B. The District Court Did Not Commit Clear Error

On appeal from a dismissal for lack of subject matter jurisdiction, this Court

"review[s] factual findings for clear error." *Makarova*, 201 F.3d at 113 (internal

quotation marks omitted); *see Carter*, 822 F.3d at 57 ("'if the [district] court ...

resolved disputed facts,'" this Court "'will accept [those] findings unless they are

clearly erroneous.'" (quoting *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5

F.3d 591, 594 (2d Cir. 1993)). No such clear error exists here.

As an initial matter, despite complaining (Br. 18) that the District Court

"resolved contested issues of fact against them," Plaintiffs do not actually

challenge the substance of any such factfinding on appeal. Plaintiffs therefore

have forfeited any argument that the District Court clearly erred. *See Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 n.1 (2d Cir. 2013) (citing Fed. R. App. P. 28(a)(9)(A)).

Nor could Plaintiffs identify any clear error here if they tried. Again, Plaintiffs' own authorities contradict their conclusory contention that Yen FX forwards are priced "based on" Yen LIBOR. The CME paper, the centerpiece of Plaintiffs' proffered basis for that contention, does not even mention Yen LIBOR and instead discusses only a generic formula incorporating an unspecified interest rate. *See* JA2499-JA2501. The CME paper thus does not support, and indeed undercuts, Plaintiffs' categorical assertion that Yen FX forwards are "priced based on Yen LIBOR." JA135-JA136 (AC ¶ 199). Confronted with the inconsistency between the source they cited in the Amended Complaint and the proposition for which they cited it, Plaintiffs offered no additional facts, or even non-conclusory allegations, to bolster their blanket allegation concerning *all* Yen FX forwards or, at a minimum, show that their *own* Yen FX forwards were priced based on Yen LIBOR. Nor have Plaintiffs ever alleged that Yen FX forwards are based on Euroyen TIBOR. The District Court's finding was both permissible and correct.

No different result is required by Plaintiffs' further contention that settlements between the CFTC and certain Defendants show that Yen FX forwards are "priced off of" Yen LIBOR. JA136 (AC ¶ 200). Notwithstanding Plaintiffs'

mischaracterizations of those settlements (Br. 8-10), the settlements say nothing about how Yen FX forwards generally, let alone Plaintiffs' Yen FX forwards in particular, are priced; instead, they merely state in general terms that among the numerous types of instruments in which employees of certain Defendants transacted, some were priced based on U.S. Dollar LIBOR, Yen LIBOR, Swiss franc LIBOR, GBP LIBOR, or Euribor.  *See* JA1631.

Plaintiffs also argue (Br. 29 n.13) that this Court should accept their allegations concerning Yen FX forwards because other courts "have accepted identical allegations based on the same industry standard pricing formula."  But the cases cited by Plaintiffs involved different benchmarks and instruments.  *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp.*, 277 F. Supp. 3d 521, 546-547 (S.D.N.Y. 2017) (Swiss franc LIBOR); *Sullivan v. Barclays Bank PLC*, No. 13 Civ. 2811, 2017 WL 685570, at *28 (S.D.N.Y. Feb. 21, 2017) (Euribor).  And still other courts have rejected arguments based on the "same" formula.  *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 Civ. 5263, 2017 WL 3600425, at *12 (S.D.N.Y. Aug. 18, 2017) (rejecting allegations that FX forwards were priced based on SIBOR or SOR benchmark rates).  Most importantly, the courts whose decisions Plaintiffs cite chose to "tak[e] those allegations [of jurisdictional fact] as true."  *E.g.*, *Sonterra*, 277 F. Supp. 3d at 547.  Here, by contrast, Plaintiffs' own principal argument is that the District Court

instead decided a critical jurisdictional fact concerning whether Yen FX forwards are priced "based on" Yen LIBOR. *See supra* Part I.A. The District Court was permitted to do so, and Plaintiffs identify no clear error in its finding.

## C. The District Court's Conclusion Was Equally Correct Under A Facial Analysis Of The Amended Complaint

In the end, it does not matter whether subject matter jurisdiction is assessed here under a factual or a facial analysis. The District Court's conclusion that jurisdiction is absent is correct under either framework. "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-152 (2d Cir. 2014) (internal citations and quotation marks omitted). Similarly, if a document that is incorporated by reference in or integral to the complaint contradicts allegations in the complaint itself, the document, not the allegations, controls. *See Amidax*, 671 F.3d at 145 ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto."); *see also, e.g.*, *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (pleading is "deemed to include … documents that, although not incorporated by reference, are 'integral' to the complaint" (quoting *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d

419, 422 (2d Cir. 2011))).  Those principles doom Plaintiffs' claims even on a facial review.

Here, Plaintiffs' standing argument turns on a single, conclusory allegation that Yen FX forwards are priced "based on Yen LIBOR."  JA135 (AC ¶ 199).  But that allegation is directly contradicted by more specific allegations elsewhere in the Amended Complaint that FX forwards are priced based on the U.S. Dollar-Japanese Yen exchange rate, not Yen LIBOR.  *See* JA135-JA136 (AC ¶ 199 n.101) (FX forward "prices are typically quoted 'in terms of' units of the Term Currency, *e.g.*, for JPY/USD the number of dollars per one Yen.").  In addition, as explained above, Plaintiffs' allegation finds no support in, and in fact is undermined by, the authorities cited in the Amended Complaint, including the CME paper, which is the linchpin of Plaintiffs' claim that all FX forwards are priced based on Yen LIBOR.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court can consider documents "relied upon … in framing the complaint" at motion to dismiss stage).  Although Plaintiffs purport to recite a pricing formula incorporating Yen LIBOR that they contend is generally applicable to Yen FX forwards, the CME paper does not mention Yen LIBOR and acknowledges that the generic formula it contains is hypothetical and might not reflect the market price for FX forwards at all.  And, again, Plaintiffs make no allegations *whatsoever* that would suggest that their FX forwards in particular might have been priced based on

Yen LIBOR.  In light of all these defects, the District Court properly declined to credit Plaintiffs' conclusory allegation concerning a link between the price of Yen FX forwards and Yen LIBOR.  *See Amidax*, 671 F.3d at 147 (on a facial attack to subject matter jurisdiction, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true").

Plaintiffs' reliance on this Court's handling of the facial challenge in *John* is misplaced.  There, the complaint established that the plaintiff regularly purchased certain pre-packaged foods from Whole Foods, and that 89 percent of all such pre-packaged foods were mislabeled to overstate the weight of the products, such that the defendant's alleged misconduct had a direct impact on the price of products the plaintiff regularly purchased.  *See* 858 F.3d at 736-737.  Considering those non-conclusory allegations on a facial challenge, this Court held that the plaintiff had sufficiently alleged an injury-in-fact.  *Id.* at 737.  Here, by contrast, Plaintiffs offered a single, conclusory allegation concerning a link between Yen LIBOR and Yen FX forwards, but then contradicted that allegation with other, more specific allegations and cited documents.  Under well-established pleading rules, the District Court correctly concluded that such an allegation was insufficient to establish an injury-in-fact, as required for the exercise of its jurisdiction.

This case is more analogous to *Amidax*. There, the plaintiff company sued a router of financial information, arguing that the router had improperly turned the plaintiff company's sensitive information over to the government. *See* 671 F.3d at 143-144. The plaintiff's standing hinged on a blanket allegation that all information contained in the router's database (including the plaintiff's) was turned over. *See id.* at 145-146. But, as in this case, this critical assertion was in fact undermined by the sources cited in the pleadings: A Treasury Department press conference DVD and a *New York Times* article that plaintiffs had attached to their complaint showed that only some information from the database was turned over. *Id.* at 147. Following the rule that, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true," this Court refused to credit the plaintiff's assertion in the pleadings that all information had been turned over. *Id.* And without more specific allegations suggesting that the disclosure included plaintiff's own information, the Court affirmed dismissal pursuant to Rule 12(b)(1). *Amidax* is on point. Here, too, the District Court properly disregarded a blanket, conclusory allegation that was undermined by sources cited in and integral to the complaint, and it properly dismissed for lack of standing because that conclusory allegation was the only connection between Plaintiffs' supposed injury and Defendants' alleged conduct.

### D. The District Court Correctly Concluded That It Lacked Subject Matter Jurisdiction Over Sonterra's And CalSTRS's Claims

Finally, in light of its correct conclusion that Yen FX forwards are not indexed to or priced based on Yen LIBOR (or Euroyen TIBOR)—whether that conclusion is viewed as a factual or facial determination—the District Court also correctly held that Sonterra and CalSTRS lack Article III standing. Because neither Plaintiff is alleged to have transacted in instruments priced based on the supposedly manipulated benchmarks, there is no "actionable causal relationship" between the instruments they did own and the alleged misconduct. *Warth v. Seldin*, 422 U.S. 490, 507 (1975); *see also Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 573 (2d Cir. 2018).

Plaintiffs argue that the District Court somehow erred by reiterating its conclusion from *Laydon* that the connection between Yen FX forwards and Yen LIBOR was "too attenuated and speculative to support standing," SA5, because the District Court rendered that conclusion in the context of a RICO statutory standing analysis, Br. 30. But the District Court's opinion here clearly addresses Plaintiffs' "lack of Article III standing," SA4, not statutory standing. And the distinction that Plaintiffs attempt to draw rings particularly hollow because, in opposing Defendants' motion to dismiss in *this* case, Plaintiffs themselves pointed the District Court back to the record in *Laydon*. MTD Opp., ECF No. 208, at 8 n.5.

Plaintiffs concede (*e.g.*, Br. 19), as they must, that basic principles of Article III standing require a causal link between Plaintiffs' alleged injury and Defendants' alleged conduct. Identifying no such link between Yen LIBOR and the FX forwards in which Sonterra and CalSTRS allegedly transacted, the District Court properly dismissed their claims.

## II. THE DISTRICT COURT PROPERLY DISMISSED THE HAYMAN PLAINTIFFS' CLAIMS

The District Court also correctly dismissed the claims of the Hayman Plaintiffs because they fail to allege any injury arising from their transactions in swaps and swaptions.

The Amended Complaint states that Yen LIBOR affects swaps and swaptions "by determining the value of the floating rate payments due." JA134 (AC ¶¶ 195, 197). But, as the District Court correctly observed, Plaintiffs do not allege that they were injured by any payment streams made under the instruments, or even that their swaps were actually paid out or that their swaptions were exercised as would have been required to trigger the floating-rate payments Plaintiffs claim were affected by allegedly artificial Yen LIBOR. *See* JA124, JA466-JA469 (AC ¶¶ 166, 910-917); JA2512-JA2519; *accord* SA6.

Plaintiffs instead contend that alleged Yen LIBOR manipulation affected the "price" or "fair market value" of their swaps and swaptions such that they supposedly "paid too much or received too little … each time they purchased or

sold a Yen LIBOR-based swap or swaption." Br. 33. The conclusory contention that the Hayman Plaintiffs paid "artificial prices" cannot salvage their claims based on either type of instrument. JA466-JA469 (AC ¶¶ 910, 912, 915, 917); Br. 13, 25.

As applied to the Hayman Plaintiffs' swaps, Plaintiffs' theory fails because they have alleged no "artificial price." As alleged in the Amended Complaint, interest rate swaps "allow two counterparties to exchange interest rate payment obligations on an agreed upon 'notional' or principal amount." JA133 (AC ¶ 192). The Hayman Plaintiffs allege that they entered into agreements to make future payments of a fixed interest rate in exchange for receiving future payments of a floating interest rate tied to Yen LIBOR. JA466-JA467 (AC ¶¶ 910, 913). They allege no payment of any "price" at the time they "purchased or sold"—*i.e.*, entered into—their swaps. Nor do the Hayman Plaintiffs allege even a theory as to how merely entering into a swap agreement could cause either party any injury. Thus, as Judge Daniels correctly concluded, the only question was whether the Hayman Plaintiffs ever made or received any artificial payments on the swaps— which, as discussed above, they did not. Accordingly, the Hayman Plaintiffs cannot claim injury-in-fact.

The Hayman Plaintiffs' "artificial price" theory of injury also fails as to their swaptions. Again, they contend that they suffered some economic injury when they "purchased or sold"—*i.e.*, entered into—the swaption transactions; as indeed

- 32 -

they must, because they do not allege that the swaptions were ever exercised as required to trigger an exchange of payments pursuant to the underlying swaps. And although unlike a swap, the "purchase or sale" of a swaption may command a price at inception in the form of a premium, based on Plaintiffs' own allegations, any effect of the supposed Yen LIBOR manipulation on the price of the swaptions would have been to the Hayman Plaintiffs' benefit. That is because, while the Amended Complaint contains allegations of upward and downward manipulation at various times, the Hayman Plaintiffs allege that Yen LIBOR was manipulated "lower" on March 3, 2010, the day they claim to have sold their swaptions, *i.e.*, when they conferred on certain counterparties an option to enter into a swap at some future time under which they would make a stream of floating-rate payments to the Hayman Plaintiffs in return for a stream of fixed-rate payments. JA469 (AC ¶ 916).

As the Amended Complaint explains, "[t]he value of a swaption is determined by the value of the underlying interest rate swap," JA134 (AC ¶ 197), which in turn is "determin[ed] by the value of the floating rate payments due under that swap contract." JA134 (AC ¶ 195). Accepting the Hayman Plaintiffs' allegations as true, a lower Yen LIBOR on March 3, 2010 would, if anything, have caused the parties to underestimate the floating-rate payments the Hayman Plaintiffs' counterparties would be required to make to them in the future if any

swaption was exercised, increasing the apparent value of the swaption to the counterparty and increasing the swaptions' sale price (*i.e.*, the premium). In other words, if the alleged manipulation had any impact at all on the sale price of the Hayman Plaintiffs' swaptions, it would have benefited, rather than harmed, the Hayman Plaintiffs.

In short, the District Court appropriately focused on the Hayman Plaintiffs' failure to allege that their swaps were paid out or that their swaptions were exercised. And the Hayman Plaintiffs have not shown any injury traceable to alleged Yen LIBOR manipulation when they entered into those contracts. The Hayman Plaintiffs lack Article III standing, warranting dismissal. *E.g.*, *Dubuisson*, 887 F.3d at 573.

## CONCLUSION

The judgment of the District Court should be affirmed.

Respectfully submitted,

/s/ David Sapir Lesser

ARI SAVITZKY
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

DAVID SAPIR LESSER
JAMIE DYCUS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street,
New York, NY 10021
(212) 230-8800

*Attorneys for Defendants-Appellees
The Royal Bank of Scotland plc, The
Royal Bank of Scotland Group plc,
RBS Securities Inc., and RBS
Securities Japan Limited*

/s/ Mark A. Kirsch
MARK A. KIRSCH
ERIC J. STOCK
JEFFERSON E. BELL
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 315-4000

*Attorneys for Defendants-Appellees UBS AG
and UBS Securities Japan Co., Ltd.*

/s/ Steven Wolowitz
STEVEN WOLOWITZ
HENNINGER S. BULLOCK
ANDREW J. CALICA
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 506-2500

*Attorneys for Defendant-Appellee Société
Générale*

/s/ David R. Gelfand
DAVID R. GELFAND
ROBERT C. HORA
MARK D. VILLAVERDE
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000

/s/ Andrew W. Stern
ANDREW W. STERN
THOMAS ANDREW PASKOWITZ
ALAN M. UNGER
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Defendant-Appellee
The Norinchukin Bank*

/s/ Jonathan D. Schiller
JONATHAN D. SCHILLER
LEIGH M. NATHANSON
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

MICHAEL A. BRILLE
MELISSA FELDER ZAPPALA
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
(202) 237-2727

DAVID H. BRAFF
YVONNE S. QUINN
JEFFREY T. SCOTT
MATTHEW J. PORPORA
SULLIVAN & CROMWELL LLP
125 Broad Street

*Attorneys for Defendant-Appellee
Coöperatieve Rabobank U.A. (f/k/a
Coöperatieve Centrale Raiffeisen-
Boerenleenbank B.A.)*

/s/ Marc J. Gottridge
MARC J. GOTTRIDGE
LISA J. FRIED
BENJAMIN A. FLEMING
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
(212) 918-3000

*Attorneys for Defendants-Appellees Lloyds
Banking Group plc and Lloyds Bank plc*

/s/ Jerome S. Fortinsky
JEROME S. FORTINSKY
JEFFREY J. RESETARITS
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

*Attorneys for Defendant-Appellee Mizuho
Corporate Bank, Ltd.*

/s/ Harry S. Davis
HARRY S. DAVIS
BRIAN KOHN
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
(212) 756-2000

*Attorneys for Defendant-Appellee Tullett
Prebon plc*

January 14, 2019

New York, NY 10004
(212) 558-4000

*Attorneys for Defendants-Appellees
Barclays Bank PLC, Barclays PLC,
and Barclays Capital Inc.*

/s/ Arthur J. Burke
ARTHUR J. BURKE
PAUL S. MISHKIN
ADAM G. MEHES
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for Defendants-Appellees
Bank of America Corporation and
Bank of America, N.A.*

/s/ Shari A. Brandt
SHARI A. BRANDT
H. ROWAN GAITHER
RICHARDS KIBBE & ORBE LLP
200 Liberty Street, 29th Floor
New York, NY 10281
(212) 530-1800

*Attorneys for Defendants-Appellees
ICAP plc and ICAP Europe Limited*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 8,018 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


/s/ David Sapir Lesser
DAVID SAPIR LESSER


January 14, 2019